UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-282(3) (PAM)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEROY LEMONTE PERRY WILLIAMS,

    Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Nathan H. Nelson and Chelsea A. Walcker, respectfully submits this memorandum regarding the sentencing of Defendant Leroy Lemonte Perry Williams. For the reasons described below, the United States respectfully requests that the Court sentence the defendant to the bottom of the Sentencing Guidelines range, or 120 months of imprisonment.

**I.   The Defendant's Criminal Offense**

This Court presided over trial in this matter and is familiar with the facts of this case. Accordingly, the government will summarize those facts only briefly here.

On the evening of August 26, 2020, the defendant went to downtown Minneapolis to join the mayhem and rioting following a false rumor about a suicide death that occurred earlier that evening. (PSR ¶ 17.) The defendant was first captured on video outside the Target retail store downtown, in which he shouted

"Round two. We're fittin' tear this city back up," and "George Floyd. Round two." (PSR ¶ 20.)



Approximately one hour later, around 9:00 p.m., the defendant was captured on video surveillance looting a Speedway Gas Station in downtown Minneapolis. (*Id.*)



Approximately two hours later, shortly before 11:00 p.m., the defendant was captured on video surveillance outside the Target Headquarters building in

2

downtown Minneapolis while a crowd broke into the building. (PSR ¶ 24.) The defendant repeatedly attempted to set cardboard on fire using a lighter both outside and inside the Target building. (*Id.*) The defendant eventually stopped when he was confronted by a bystander who saw what he was trying to do and intervened. (*Id.*) The defendant then left downtown. (*Id.*)



## II.   The Defendant's Procedural History

On November 4, 2020, the defendant was charged by complaint with arson, in violation of 18 U.S.C. § 844(i). (Dkt. 1.) On November 19, 2020, the defendant was arrested on a federal warrant and detained. (PSR ¶ 12; Dkt. 3.) Following a detention

3

hearing on November 24, 2020, the defendant was ordered released to a halfway house. (PSR ¶ 12; Dkt. 10.)

On December 10, 2020, the defendant, along with his co-defendants, were charged by Indictment with conspiracy to commit arson, in violation of 18 U.S.C. §§ 371 ad 844(i). (PSR ¶ 1; Dkt. 22.)

On January 1, 2021, while on pretrial release, the defendant went to the Target retail store in downtown Minneapolis, and attempted to intimidate and threaten Target employee Heather Henning due to her involvement in this case. (PSR ¶ 29.)

Following multiple rule violations at the halfway house and his unsuccessful termination from the program, the defendant was ordered detained on January 8, 2021. (PSR ¶ 12; Dkt. 57.)

On January 25, 2021 the defendant pleaded guilty to conspiracy to commit arson. (PSR ¶ 4; Dkt. 68.) The defendant then moved for a furlough to Minnesota Adult and Teen Challenge to participate in their mental health and substance use disorder treatment program. (Dkt. 71.) The Court granted the furlough motion on February 3, 2021. (PSR ¶ 12; Dkt. 73.)

On September 1, 2021, the defendant absconded from the program and his supervision. (PSR ¶ 13.) The defendant's whereabouts remained unknown until his arrest in Indiana on new felony charges almost a year later, on July 19, 2022. (*Id.*) In October 2022, the defendant was extradited to the District of Minnesota. (*Id.*) Once in the District of Minnesota, the defendant moved to vacate his guilty plea, which the Court granted on March 8, 2023. (PSR ¶ 7.)

4

On March 28, 2023, a federal grand jury issued a superseding indictment charging the defendant with Arson, in violation of 18 U.S.C. § 844(i). (PSR ¶ 8.) On October 26, 2023, following a three-day trial, a federal jury found the defendant guilty of Arson. (Dkt. 369; PSR ¶ 10.)

### III. The Defendant's Guidelines Range

As set forth in the PSR, the base offense level is 24 for the offense of conviction pursuant to U.S.S.G. § 2K1.4(a)(1) because the offense involved a place of public use. (PSR ¶ 38; *see* U.S.S.G. § 2K1.4(a)(1).) The offense level is increased by two levels because the defendant obstructed the administration of justice. (PSR ¶ 42; *see* U.S.S.G. § 3C1.1.) The defendant is not entitled to a reduction for acceptance of responsibility. Thus, as calculated by the probation officer, the advisory Sentencing Guidelines range with a criminal history category VI, is 120 to 150 months. (PSR ¶ 137.)

The defendant disputes his Sentencing Guidelines range. As an initial matter, the defendant proposes that the base offense level is 20 because he claims that the Target Headquarters was not open to the public. (Dkt. 390 at 3.) In addition, while the defendant concedes that violation of pretrial release conditions can justify a two-level enhancement for obstruction of justice, he asserts that his absconding from supervision was "not the result of willful conduct." (Dkt. 390 at 2.) The defendant further claims that he should receive a reduction for acceptance of responsibility because he believes he told the truth at trial. (Dkt. 390 at 3.) Finally, the defendant challenges his criminal history category and contends that he only has 13 criminal

history points. (Dkt. 390 at 4.) The defendant acknowledges that regardless, the defendant will remain at a criminal history category VI with 13 criminal history points. (*Id.*) Nonetheless, the defendant argues that he should be treated "more as a category III or IV offender" because he claims that his criminal history is inflated and warrants a downward departure. (Dkt. 390 at 5.) The government agrees with the probation officer's response to the defendant's objections as set forth in the PSR. (PSR at A.1-A.4.)

## IV. The Sentencing Factors

The United States respectfully submits that a sentence of 120 months' imprisonment—which is the bottom of his advisory 120–150 month range—followed by 3 years of supervised release is not only appropriate based on the recommendations of the Sentencing Guidelines, but is warranted by the factors set forth in 18 U.S.C. § 3553(a). This sentence will provide both specific deterrence to the defendant and general deterrence to others who might hesitate before joining in a destructive frenzy like that seen on August 26, 2020. Such a sentence will also adequately protect the public—in the near term—from the defendant's potential future crimes. The requested sentence also appropriately balances the significance of the harm to Target, Speedway, and downtown Minneapolis, the nature and extent of the defendant's criminal history, as well as his unique personal characteristics.

### A. The Nature, Circumstances, and Seriousness of the Offense

The nature of defendant's offense is very serious. *See* 18 U.S.C. § 3553(a)(2)(A). The defendant actively participated in the looting and arson on August 26, 2020 in

downtown Minneapolis. The defendant targeted local businesses and stores for looting and destruction for hours despite the overnight curfew and state of emergency in place at the time.

The defendant participated in a highly destructive act of arson that placed the lives of bystanders, rioters, law enforcement, and firefighters at great risk, although his attempts were unsuccessful. He tried to start a fire inside a building while others were in the building, including Target security and other rioters. He exhibited no concern for the safety of the people inside the building or what would happen to the building and its surroundings if he managed to successfully start the building on fire.

Perhaps most disturbingly, the defendant appeared to have no remorse. When a bystander saw what the defendant was doing inside the Target Headquarters and tried to intervene, the defendant aggressively pushed him away. As evidenced by his testimony at trial and pre-sentencing filings, the defendant continues to deny all responsibility for his crime.

      **B.**    **The Defendant's Personal History and Characteristics**

A sentence of 120 months of imprisonment takes into account the defendant's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). The defendant's conduct the evening of August 26, 2020 is commensurate with his lengthy criminal history. The defendant is a Criminal History Category VI despite being only 37 years old. Since at least the age of 19, the defendant has participated in at least a dozen noteworthy criminal events in which he violated the law or threatened public safety. (PSR ¶¶ 52–

74.) As indicated in the PSR, the defendant's first documented interaction with law enforcement was at age 14. (PSR ¶ 105.)

The nature and circumstances of the defendant's criminal history is serious—ranging from felony first-degree burglary, receiving stolen property, lying to police officers, to carrying a firearm in a public place. The defendant is in category VI, the highest possible criminal history category. The defendant's criminal history is aggravated by his habit of failing to appear for court, violating the terms of his release, and continuing his criminal behavior, including an arrest on July 19, 2022, following new felony burglary and theft charges in Indiana only ten months after he absconded from furlough and placement at Minnesota Teen Challenge. (PSR ¶ 155.) Crime has been a mainstay of the defendant's life, and his conduct is getting worse over time.

The PSR presents an individual who has struggled with accountability. As the defendant's own statements and actions have made clear, the defendant blames everyone but himself for his actions. Unlike his co-defendant Shador Jackson who promptly and fully accepted responsibility for his actions, the defendant continues to make excuses for and minimize his conduct the evening of August 26, 2020. The defendant's own testimony and correspondence with the Court reveal that the defendant continues to blame others, including the prosecutor, the jurors, and his own trial counsel. The complete absence of any remorse shown by the defendant is disturbing. He engaged in serious crimes, and yet he seems more intent on deflecting or re-assigning blame than in telling the truth and expressing remorse.

### C. The Need to Afford Adequate Deterrence and Promote Respect for the Law

In this case, there is a need for both individualized and general deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). A guidelines-range sentence is appropriate to afford specific and general deterrence. First, there is little, if anything, in the record to indicate that the defendant himself is deterred. Even after the indictment and his conviction in this case, he failed to comply with the terms of his release, fled, and allegedly committed a new crime while a fugitive. Before the Court is a defendant who has no qualms about engaging in more crimes—and more serious crimes—after this pending case is over if he does not receive a sufficient sanction now. Only a significant sentence is likely to influence the defendant's future behavior. Accordingly, a sentence of 120 months' imprisonment is an appropriate attempt to deter the defendant from committing this or similar crimes in the future.

In addition, a significant sentence is also important as a general deterrent to criminal conduct. While no one hopes for widespread riots in the future, the likelihood of such events remains a distinct possibility as this nation grapples with a period of civil unrest. By sentencing the defendant to a 120 month term of imprisonment, a general deterrent message is sent to members of the public who may seek to emulate his actions.

### D. The Need for Treatment

In this case, a particularly important sentencing factor for consideration is a sentence that will provide the defendant with needed treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D).  The defendant is plagued by substance abuse

9

and mental health issues, which have surfaced throughout his time on supervised release in this case, including a positive sample for alcohol, nicotine, and cocaine, use of tobacco, drugs, and alcohol, arguments with peers and staff in his treatment program, and his September 1, 2021 unsuccessful discharge from long-term mental health and drug treatment. As the PSR makes clear, after the defendant was given the opportunity to stay out of custody and continue with treatment, he continued to struggle.

The defendant's untreated mental health and substance abuse issues are a ticking time bomb that endanger himself and those around him. In light of the urgent need for the defendant to receive needed treatment in the most effective manner as per 18 U.S.C. § 3553(a)(2)(D), the government requests that the Court impose a custodial sentence and that he be ordered to receive all available counseling and treatment from the BOP. Such a sentence will best ensure that the defendant receives needed and overdue addiction and mental health treatment in a setting where he cannot access drugs or alcohol.

### E. Avoiding Unwarranted Sentencing Disparities

A sentence of 120 months of imprisonment will not create unwarranted sentence disparities with defendants of similar records found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). The requested sentence for the defendant is appropriately higher than that of his co-defendant, Shador Jackson, who was sentenced to 33 months in prison followed by 2 years of supervised release. (*See United States v. Jackson*, 20-282(1) (PJS/ECW)). Jackson pleaded guilty to conspiracy

to commit arson early in the investigation, took full responsibility for his actions, and has significantly less criminal history. The requested sentence for the defendant is also appropriately higher than that of his other co-defendant, Victor Edwards, who was sentenced to 100 months for Arson (Count 2) and 60 months for Riot (Count 1), with those sentences to run concurrently. (*See United States v. Edwards*, 20-282(2) (PJS/ECW)). In contrast to his co-defendants, the defendant has steadfastly refused to take any accountability for his actions, has sought to blame others throughout the pendency of his case, and has obstructed justice. The aggravating circumstances of the defendant's conduct and behavior justify a guidelines sentence of 120 months.

## V.  Conclusion

For the reasons set forth above, the United States respectfully submits that a sentence of 120 months of imprisonment followed by 3 years of supervised release fully comports with the United States Sentencing Guidelines and the factors of Title 18, United States Code, Section 3553(a).

Dated: January 17, 2024                                         Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Chelsea A. Walcker*

BY:   CHELSEA A. WALCKER
      (Attorney ID No. 0396792)
      NATHAN H. NELSON
      (Attorney ID No. 0388713)
      Assistant United States Attorneys